IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY BERNARD LOFTIS, #1636215, PETITIONER, | § § § § | |
| v. | § § | CIVIL CASE NO. 3:21-CV-2100-E-BK |
| DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION DIV., RESPONDENT. | § § § § § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner Anthony Bernard Loftis' *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge for case management, including findings and a recommended disposition where appropriate. As detailed here, the habeas petition should be **DENIED**.

**I. BACKGROUND**

Loftis pled true to the allegations in a motion to adjudicate his guilt for the offense of possession of a controlled substance with intent to deliver and was sentenced to 15 years' imprisonment. *State v. Loftis*, No. F-0715840-T (283rd Jud. Dist. Court, Dallas Cnty., Tex., Mar. 25, 2010), *appeal dismissed*, No. 05-10-00430-CR, 2010 WL 4613426 (Tex. App.—Dallas, Nov. 16, 2010); Doc. 23-1 at 49 (*Judgment Adjudicating Guilt*).[1] He was initially released on parole in 2012. Doc. 23-1 at 4-6, *Aff. Charley Valdez*. Although multiple revocation warrants

---

[1] For ease of reference, the Court cites to documents contained in the Appendix filed with the State's Response where possible. Doc. 23-1.

were issued, they were subsequently withdrawn, and Loftis was continued on parole. *Id.* On June 8, 2020, a revocation warrant again issued, and Loftis' parole was revoked on November 6, 2020. Doc. 23-1 at 4, 6-7. The Texas Court of Criminal Appeals subsequently denied state habeas relief without written order. *Ex parte Loftis*, No. WR37,661-08 (Tex. Crim. App. Aug. 11, 2021); Doc. 23-1 at 52.

Loftis later filed this timely, *pro se*, federal habeas petition challenging his parole revocation on due process grounds. Specifically, he asserts that he was denied counsel at the revocation hearing and his parole was improperly revoked. Doc. 3 at 6. Respondent argues the claims lack merit. Doc. 23. Loftis has filed a reply in opposition. Doc. 24. He also later filed a *Motion for Leave to File an Amended Motion Regarding Newly Discovered Evidence Concerning Ground #1*, which was granted. Doc. 28.

Upon review, the Court concludes that Loftis has not demonstrated that the state court's decision rejecting his claims was based on an unreasonable determination of fact or an unreasonable application of clearly established federal law. Consequently, Loftis' claims fail.

## II. ANALYSIS

Under the deferential standard set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is not entitled to federal habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter*, 562 U.S. at 102). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (quotations and citations omitted; emphasis in original).

The deferential standard of review applies even where the state court summarily denied all claims without written order. *See Richter*, 562 U.S. at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). Where there is no reasoned state court decision, as here, the court "'must determine what arguments or theories . . . could have supported the state court's decision; and then it must

Page 3 of 8

ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court.'" *Sexton v. Beaudreaux*, ––– U.S. –––, 138 S. Ct. 2555, 2558 (2018) (quoting *Richter*, 562 U.S. at 102).

### A. Cannot Surmount the Relitigation Bar

As noted, "§ 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Richter*, 562 U.S. at 98. To overcome the relitigation bar, the petitioner bears the burden of showing "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Richter*, 562 U.S. 86, 103 (2011)); *see also Thomas v. Vannoy*, 898 F.3d 561, 566 (5th Cir. 2018) (reaffirming the "relitigation bar").

Here, Loftis does not meet that high burden. He merely restates the grounds he previously raised in his state habeas application and presents no arguments or legal authority in support of his challenge to the Court of Criminal Appeal's decision to deny his claims. Because Loftis has failed to show the state court erred in denying his claims, he cannot surmount the relitigation bar of § 2254(d). Thus, his claims lack substantive merit and fail on that basis. Notwithstanding that conclusion, Loftis' claims also fail on the merits.

### B. No Constitutional Right to Counsel at Revocation Hearing

Loftis asserts that he was denied the right to appointed counsel during the parole revocation. Doc. 3 at 6. He maintains that "[t]he hearing was beyond the capability of a mentally impaired parolee," Doc. 3 at 15, and that he felt compelled to admit both allegations, Doc. 24 at 5.

Page 4 of 8

As an initial matter, Loftis never requested the appointment of counsel in the parole proceeding. Further, a parolee has no absolute right to counsel during parole revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); *United States v. Carrillo*, 660 F.3d 914, 925 (5th Cir. 2011) ("[P]arolees are not automatically entitled to appointed counsel at revocation hearings."). Rather the decision to appoint counsel is left to the sound discretion of the state authority charged with the responsibility of administering the parole system. *Gagnon*, 411 U.S. at 790-91 (holding the need for counsel in the informal revocation context should be decided on a case-by-case basis, rather than by an inflexible per se rule).

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Gagnon*, 411 U.S. at 790. Additionally, the agency should consider whether the petitioner appears "capable of speaking effectively for himself." *Id.* at 791.

Although Loftis had previously been classified by the Texas Board of Pardons and Paroles as having a special condition requiring him to attend mental health treatment/counseling, Doc. 3 at 6; Doc. 24 at 5, he nevertheless fails to demonstrate that the hearing officer abused his discretion in denying the appointment of counsel. Loftis' reliance on the holding in *Ex parte Taylor*, 957 S.W.2d 43, 47-48 (Tex. Crim. App. 1997) (per curiam), is misplaced, as that court did not mandate "'that counsel . . . be provided for revocation hearings . . . if the inmate is indigent and either mentally impaired or physically disabe[d] such that he cannot communicate

Page 5 of 8

effectively or if the allegations are of a complex nature such that the inmate needs assistance in gathering evidence or asking questions," as Loftis suggests. Doc. 3 at 12. Instead, the decision merely summarized the circumstances clarified in *Gagnon* that *may* justify the appointment of counsel. Further, contrary to Loftis' assertions, the Special Needs Offender Program ("SNOP") procedure does not require the appointment of counsel. Doc. 28 at 3. It merely states that "[a]ny offender with a history of mental impairment shall not have an opportunity to *waive* one or both hearings unless they have an attorney present." Doc. 28 at 21 (emphasis added). Loftis undisputedly received both hearings here.[2]

Moreover, Loftis admitted both violations at the parole revocation hearing—(1) the technical violation of failure to reside in a specified place, and (2) the Class C misdemeanor offense of disorderly conduct, which was reduced from a misdemeanor charge of failure to identify and giving false information. Doc. 23-1 at 14-15. He fails to allege, much less show, that as to the revocation proceedings, (1) the issues were complex, (2) he could not understand the proceedings or speak for himself, or (3) he was incapable of reasonably presenting his arguments. And nothing in the record supports such findings. Finally, Loftis fails to present any plausible argument that revocation was not appropriate. Notably, he only challenges the technical violation here, Doc. 3 at 15-16, and seemingly ignores that his misdemeanor conviction for disorderly conduct, also relied upon by the hearing officer, was sufficient basis to revoke his parole. *See also* Doc. 24 at 6-7 (challenging only the technical violation and claiming that he

---

[2] While Loftis initially waived a hearing on October 16, 2020, Doc. 23-1 at 48, he requested a revocation hearing after receiving an amended notice on October 27, 2020, Doc. 23-1 at 9-12.

pled "no contest" to disorderly conduct simply because he was uncertain that he committed an offense).

On this record, the state court's denial of relief was not based on an unreasonable application of federal law or an unreasonable determination of the facts. Thus, Loftis first claim fails.

### C. Parole Revocation Hearing Afforded Due Process

Next, Loftis asserts that the revocation proceedings did not comport with due process requirements. Doc. 3 at 6. He re-asserts that he was entitled to an attorney and argues that an attorney could have gathered the necessary evidence, secured the presence of a witness to challenge the technical violation, and ensured his right to cross-examine that witness. Doc. 3 at 15-16; Doc. 24 at 6-7. However, Loftis' claim again lacks merit.

Although parole revocation proceedings are "not a part of a criminal prosecution," they must still conform with the following minimum due process requirements: (1) written notice of the alleged parole violations; (2) disclosure to the parolee of the evidence against him; (3) an opportunity to be heard in person and present witnesses and documentary evidence; (4) the conditional right to cross-examine and confront witnesses; (5) a neutral decision-maker; and (6) a written statement as to the evidence relied upon and the reasons for revoking parole. *Gagnon*, 411 U.S. at 781, 786; *Morrissey Brewer*, 408 U.S. 471, 484-90 (1972).

In this instance, Loftis was undisputedly afforded the minimal due process due. Again, in the context of his due process claim, Loftis complains only of the denial of an attorney during the parole revocation proceeding. On this record, the state court's denial of the second ground was

neither based on an unreasonable application of federal law nor an unreasonable determination of the facts.

## III. CONCLUSION

For the foregoing reasons, Loftis' petition for writ of habeas corpus should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on November 9, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).